Okay. Thank you, Your Honor. I'd like to reserve five minutes for rebuttal, please. Sure. The three drivers at issue in this case lived in California, worked in California, filed suit in California, and asserted California statutory claims. These three drivers were low-level employees at EGL. They needed no specialized skill in order to drive the small trucks and the vans that they used to deliver EGL's packages, and in fact simply needed a regular California driver's license. These three drivers performed the core function of EGL, and that was package pickup and package delivery, and were fully integrated into EGL's operations. The district court held that these drivers were not covered by the California Labor Code, because under Texas law, as a matter of law, they were independent contractors. In reaching this conclusion, the district court got it wrong in five main ways. First, the district court misread Texas authority concerning the interpretation of a narrow choice of law provision, like the one in this case. When it held that, despite that provision's reference only to contract interpretation, it would also encompass and govern plaintiff's statutory claims. Second, the district court illogically applied another state's law to determine the meaning of a term, employee, found in the California Labor Code. Third, the district court failed to understand that when a substantive right, like the wage and hour provisions at issue, may not be waived by contract, that right also may not be indirectly waived through a choice of law provision, because that waiver would violate a fundamental state policy. Any of these three errors would provide a reason to reverse the district court's choice of law determination. In addition, the district court erred in its summary judgment analysis in two primary ways in deciding that, as a matter of law, plaintiffs were independent contractors rather than employees. The first of those two ways was that the district court failed to apply the proper summary judgment standard when it resolved factual disputes in EGL's favor and when it ignored evidence that supported the plaintiff's status as employees. And the second of those summary judgment errors was perhaps the most important one, and that was that the district court glossed over California law in a footnote, failing to articulate the applicable test or even to cite the main on-point California authority. And it also incorrectly applied Texas precedent when it decided that these drivers were independent contractors as a matter of law under either state's test. In fact, not only could a reasonable jury have decided that these three drivers were employees, but federal tax authorities, state tax authorities, and the California Unemployment Authority have decided that these particular three drivers are employees, and a reasonable jury could have reached the same conclusion. I'd like to go into a little bit more depth on each of those errors. First, in terms of a choice of law, does it matter whether and whether these individuals were employees or independent contractors, does it matter at the end of the day whether California or Texas law applies? Your Honor, we would submit that under either state's test, EGL would not have been entitled to summary judgment on this question. However, we would urge this Court to resolve the choice of law issue, because of course when this case is remanded, the district court will need to decide which state's law applies for purposes of jury instructions and further proceedings in the case. And this Court can and should reach that choice of law issue. This Court can decide that on any of a number of grounds. First, in terms of the choice of law. EGL has cited no case in which a narrow choice of law provision, like the one at issue,  choice of law provision in this case is that the plaintiff should not have had summary judgment decided adversely to them under either state's test, but there are differences in the applicable law. In terms of the choice of law provision in the contract itself, EGL has cited no case in which a narrow choice of law provision, like the one at issue, has been held to apply to statutory claims or to tort claims. The contractual choice of law provision mentioned only that the agreement would be interpreted under the laws of the State of Texas. In Steyer and other cases, much broader choice of law provisions that also addressed issues of contract enforcement were held not to apply broadly to tort claims and to statutory claims. And EGL has not cited any authority that supports its application here. In addition, it makes no sense to divorce the term employee from the statutory provisions in which that term appears. What matters here is whether the plaintiff drivers are employees under the California Labor Code. Whether they are employees under a different State's test or even under a different test in the State of California is completely irrelevant, because there's no such thing as someone who is an employee in the abstract. There are different tests that apply to different statutes in different or different claims in different States. And so the district court's approach to this and EGL's approach to this really make no sense. Third, in terms of the fundamental State policy that is at issue, EGL does not quarrel with our explanation of how this Court should decide whether a fundamental policy is implicated here, and that is to decide whether the rule of law at issue promotes important goals and to look at whether the rule of law at issue is a fundamental issue is waivable by a party's consensual agreement. In terms of whether the rule of law at issue promotes important goals, in our opening brief and in the amicus briefs, we've explained why the California Constitution, the enforcement scheme, the case law applying these provisions, the fact that many of these provisions are actually criminal in nature, all shows the importance of both the substantive provisions at issue and the determination of who is an employee versus who is an independent contractor under California law. In terms of whether the rule of law at issue is waivable, the reason why this matters is that when a right is not waivable, it shows that the policy at issue is more important than the party's consensual agreement. And the other reason is that otherwise parties could evade the rule of law and waive indirectly what they could not waive indirectly. And the Guardian Savings and Loan case articulates why the fact that something is not waivable really shows that it does reflect a fundamental State policy. EGL concedes that the rights that plaintiffs assert are not waivable and that employee status is not waivable under California law. Therefore, if the plaintiffs at issue – if the plaintiffs may be employees under California law, but the differences between the law of the two States could yield a different result under Texas law, the application of Texas law would violate a fundamental State policy. I've also mentioned that the district court erred in its application of the independent contractor versus employee test under either State's law. The district court was wrong to dismiss California law in a footnote, and it was wrong to fail to address the primary analogous authority under California law, cases like Air Couriers and Gonzales and Yellow Cab. The district court also did not address the Estrada case. Of course, that was decided subsequently to the district court's decision, and so the district court perhaps would have had an easier time if it had had the benefit of the Estrada case. These drivers performed a low-skilled job. They needed only a regular driver's license. They performed a core function of EGL. And so under California authority, like the JKH case and the Borrello case, given the low-skilled nature of their job and how integrated they were into EGL's operations, they don't even need to show that EGL actually exercised detailed control over the details of their job. However, there is substantial evidence in the record, particularly if all inferences are drawn in plaintiff's favor, that EGL did exercise tight control over the means and manner by which these drivers accomplished their core function, which was the delivery and pickup of EGL's packages. The plaintiffs did not operate as independent businessmen, but they operated as employees who were dependent on the dispatchers of EGL. EGL tightly controlled the customer relationship. It was not a situation where the drivers could earn more money through their entrepreneurial skill or initiative. The only way that they could earn more money was to do more deliveries, and the district court ignored this important factor. EGL also did exercise substantial control over the method and manner of accomplishing the results that the drivers were responsible for. EGL exercised substantial control over the details of the drivers' schedules, over their assignments, over their routes, over their appearance, over the appearance of their vehicles, and fulfilled many of the other indicia of employment under the common law statutory and under the common law tests. EGL, there's substantial evidence that EGL controlled the drivers' schedules, including what time they would start. Photos of a schedule board showing the drivers' start times are in the record. EGL exercised substantial control over the drivers' end time, over whether they could take vacation. There is a memo requiring drivers to request time off in a vacation request form that are in the record. And the district court wrongly resolved factual disputes on this issue in EGL's favor. There's substantial evidence that EGL gave out assignments in packets and that drivers who rejected assignments were punished for this rejection. The district court wrongly resolved factual disputes in this area as well. EGL told the drivers what they should look like and what their vehicles should look like, showing that EGL treated these drivers as out there representing EGL, not out there representing their independent businesses. And that is why EGL cared what they looked like. There is substantial evidence that EGL issued detailed policies and procedures regarding how packages should be picked up and delivered, what to do if the customer didn't want to sign something more than one time, when they should and shouldn't use the radio, what they should do after an accident. These drivers were effectively terminable at will. The provision in this case is like the provisions in Estrada, Gonzales, Sprose and Antelope. And under California law, this is a significant, important factor. This case is very close to Estrada and Air Couriers. And if it would please the Court, I would like to reserve my remaining time for rebuttal. Roberts. You may. You have a little under five minutes. We'll hear from EGL at this time. Mr. Cruz. Good morning. Good morning. May it please the Court. The plaintiffs own and operate trucking businesses. Under any legal standard, the undisputed facts in this case make clear that the contractual arrangement and the business relationship between EGL and the owner-operators is utterly inconsistent with employee status. The undisputed facts in this case include the following. Number one. Which point are you addressing? Are there summary judgment issues or the applicable law? I'm addressing the merits of whether or not these individuals are employees or independent contractors. And the argument I'm making And what do we look to? Do we look to the contract or to California law? My point is the answer should be the same under either Texas or California law. We would submit the Court should look to Texas law under the terms of the contract. But under either State's law, the answer is the same. And why should we look to Texas law? This Court should look to Texas law because the contract specifies in a choice-of-law provision that both parties agree to that Texas law will apply. To the interpretation of the agreement, not even its enforceability, as some clauses say, doesn't even apply to its enforceability, which is a separate issue. What has to be interpreted here? Isn't it California law rather than the contract that has to be interpreted? Judge Corman, I would suggest that the antecedent question is whether these individuals are employees or independent contractors. The contract Why is that an antecedent question? I don't understand that. Because if they are not employees, the California labor laws don't apply. I mean, that's the very first question is, are they employees or not? Under what law? But it is the contract that creates their relationship. I mean, everything the contract is doing is creating the relationship between the two of them. And so in Not necessarily. The contract may create the formal relationship, but it doesn't necessarily translate into what happens on a daily basis. But the real question is, what do we look to to define, to determine whether they're employees? Do we look to California law as they're defined under California law? Or do we look to the contract? We would submit that this Court should look to Texas law, because the California Supreme Court has said California has a strong interest in applying choice of law provisions. And here the question is, this is the fruits of the contract were the relationship between the two. If the inquiry is, are these individuals employees or contractors, that inquiry is impossible without looking to the contract. I understand that California may have a policy of favoring choice of law clauses. But the question is, setting aside the validity of whether this choice of law clause is enforceable under other provisions, other Supreme Court decisions of California, my question is, isn't this really, assuming California law governs here, isn't this a question of California law and not of contract? What has to be interpreted in the contract? Well, respectfully, your question asks, assuming California law governs here. And I would suggest that that assumption is not a valid assumption. Because the fruits of the contract, if I go and rent a property. Look, if there were, let me make it, let me revise the question. Suppose there were no choice of law clause. Is there any question about the fact that California law would apply here? No, none whatsoever. But suppose there were no choice of law clause. There is a choice of law clause. Relating to the interpretation of the agreement. But the agreement, the entire purpose of the agreement is to create the relationship between the parties. That's what the agreement does. And if the question is, what is the relationship between the parties, it is impossible to answer that question without interpreting the agreement. It necessarily requires interpreting the agreement to answer the question, what is the – if two individuals create a partnership, and there are laws that applies to partnerships, it's impossible to ascertain whether they're in a partnership without looking to the partnership agreement that creates the legal relationship. And as well, one looks to what actually happens in the day-to-day relationship between the parties. Absolutely. And your adversary has made it, and the record seems to be fairly compelling here, that there are significant aspects of the day-to-day relationship and the nature of the employment here that would suggest that a jury could find that they were notwithstanding the language of the agreement, that they were employees. Judge Corman, if I could address that exact question and to say, even under California law, we would submit the undisputed facts here, make clear as a matter of law these individuals are independent contractors. And if I could point out the particular undisputed facts that there is no dispute on this record about. Number one, these owner-operators operated companies using DBAs. They held themselves out as businesses. Heath held himself out as Tom's Express. Narayan held himself out as MCA Transfer. Each of them made substantial investments in trucks or vans. Each of them could choose whether to work or not, and they could take off as many days as they wished. That's not consistent with employment relationship. And what I would suggest, the courts have long struggled with what is an employee versus what is an independent contractor. And the federal courts have looked to the common law in ascertaining that question and have struggled with the right of control test. And I would suggest the better interpretation of the right of control test that both this court, the Ninth Circuit, has arrived upon, and also the D.C. Circuit, considering these issues, has said the essence of what it means to be an independent contractor is an entrepreneurial opportunity for gain or loss. This court, in the Friendly Cab decision and previously in the Merchant's Home Delivery decision, which cited the D.C. Circuit cases, said the key question is, are the individuals more like businesses? Are they entrepreneurs? Are they making profits? Are they making losses? Are they engaged in risk? Or are they employees? If you look to that, whether it is under California or Texas law, if you look to entrepreneurial opportunity for gain or loss, each of these owner-operators, for example, could choose to hire others to drive for them, which means none of them ever needed to go to work even one single day. Now, I would suggest the ability to choose to hire others to carry out a task is completely inconsistent with employment status. If I may draw an analogy to an employee situation all of us are familiar with. Associates in law firms. An associate in a law firm is a slave. Is at a minimum an employee and perhaps a slave employee. I am grateful that over time does not apply to associates in law firms. Right. But, I mean, all you're saying, basically, as I listen to you and as I read your opponents' brief and hear the arguments, it's all material issues of fact in terms of the right of control, the day-to-day operation, and so forth. So if you lose on the contract, I mean, if you lose on the contract interpretation, it is considering the very factors that you're urging and your opponent urges on us, isn't it? That's for a jury to decide. Respectfully, I would suggest it's not. The factors I'm pointing to, there is no dispute about. There's no dispute that these individuals held themselves out as businesses. There's no dispute that- Well, they held them out as far, if you were a member of the public, if you want to talk about holding out, you wouldn't think that they were holding themselves out as independent businessmen. You would think they were just like the UPS drivers. Well- They're required to drive cars, which indicate the logo of the company. They're told, you know, they're told when to make these deliveries. They're terminable for all practical purposes at will. There's all- This is, as you say, what constitutes an independent contractor and an employee is often a difficult question, but it's based on all of the facts of the case and what a jury could reasonably find. Is this a summary judgment issue, assuming that California or possibly even Texas law applies? Judge Corman, Plaintiff Heath, for example, had business cards printed that said Tom's Trucking. He had credit cards with Tom's Trucking. Right. But why does that make a difference when, on the other side, they, in terms of summary judgment analysis, of course, it makes a difference in terms of the ultimate concluding the case, but your point will say, yes, but the EGL logos had to be on their work apparel. We don't dispute that. Yeah, exactly. So it's not as clear-cut as saying, well, they were holding them, your statement was, they're holding themselves apt to the public as independent contractors. Well, sometimes and sometimes not. That's the undisputed state of the record. There are no- When I see somebody on the street who's got the logo of your company and the logo of your company on the work uniform, I don't think it's Tom's Trucking. That's the plain fact of it. But whether they wear uniforms or not is not disputed. My point is the undisputed facts in this case yield an outcome as a matter of law. When Tom's Trucking made deliveries for Tom's Trucking, did they have the EGL logo on the vehicle? Yes. Yes. Yes, Your Honor. I thought there was evidence in the record that, as a practical matter, they, you know, could just change the logo, you know, to accommodate deliveries elsewhere and for other people. There are statements in the declarations that were drafted by plaintiff's counsel to that effect, but if you look to the deposition testimony, for example, he's deposition testimony at ER 44, he admits that you can cover up the logos and put magnetic coverings over it. And there's no dispute, there is no dispute each of these drivers had the ability to work for anyone else. And in fact, if I would point out, it's not simply a hypothetical ability. One of them, Rahawi, owned two separate trucks and hired a driver to deliver for a competitor for Cal State Express. I would suggest this is critically important. Rahawi is running a trucking business. He described EGL as, quote, one of his best customers. Employees don't describe their boss as one of their best customers. These individuals started out running a trucking company before they worked with EGL. When they worked with EGL, they were running a business with profit and losses. And if this Court looks to, for example ---- Kennedy. Look, it's possible for ---- there are many people in this country who are employees who work through jobs. I mean, this is not ---- I don't see that this ---- how this helps you as a matter of law. But, Judge Corman, I would suggest there are no employees who can hire somebody else to do their job for them. To go back to the associate in a law firm analogy, if someone is an associate in a law firm and they are assigned a project by a partner in the law firm, they're not allowed to say, I've hired someone else to do the work for me. Actually, some law firms allow that. I mean, you can't ---- that's certainly not on the record, but I can tell you some concrete examples where that very thing has happened. Some law firms will hire contract lawyers. No, no. But we don't need to get disputed for something that's not on the record at all. But I don't think your analogy completely works. Employees lack the authority to subcontract out carrying out their job. And I would commend this Court in particular to the D.C. Circuit's decision in the Federal Express case. That is the end point of a long series of cases the D.C. Circuit has struggled with exactly this question. What is an employee versus what is an independent contractor? Earlier this year, the D.C. Circuit in the Federal Express case considered facts that have a lot of similarities to the facts in this case and concluded the opportunity for entrepreneurial gain. And the reason the D.C. Circuit said is there the owner-operators could hire someone else to do their job, could own multiple trucks. They operated like a business. They didn't operate. And that's true under the common law, whether it is the National Labor Relations Act and the common law or California law or Texas law. You've told us that apparently in the – there's some deposition testimony that some of these individuals made deliveries on their own hook, if you will, while still wearing EGL paraphernalia and having EGL on their truck. Is that right? Can I hear you? That's not exactly what I said. What I said is that Heath admitted you can cover up the logos on the truck, that you can put magnetic covers up to cover them up, and so you would be able to drive for others if you wish to. And beyond that, I said Rahawi owned two different trucks. And in running his business, he drove one and did deliveries for EGL. And he had another driver that did deliveries for a competitor, Cal State Express. And that's at SER 773 to 75. Didn't the agreements require that they wear EGL logos and have EGL logos on their trucks when they were working for EGL? Yes. And federal law, DOT regulations require that. And that when they were working on their own to remove those logos? Didn't the agreement provide that? Yes. That's what the agreement provides. But you're telling us that in some respects the actual behavior was different. No. The agreement provides cover up the logos if you're doing work for others. And what Heath said is you can cover up the logos. That's entirely feasible. They also submitted declarations that said it wasn't feasible. But his own deposition testimony contradicts those declarations and says you could put magnetic coverings up. Was there any factual discovery that indicated that when they, for example, Tom's Trucking was working as Tom's Trucking, that they did so with EGL logos on their uniforms and on the trucks? There was nothing in the record to that. So as far as the record is concerned, these individuals complied with the agreement in that respect? Yes. Okay. Thank you. Under the D.C. Circuit's decision in Federal Express and under this Court's decision in Merchant's Home Delivery, entrepreneurial opportunity for gain or loss should be the central concern. Okay. Thanks for coming in. Good argument. Rebuttal, you have a little under five minutes. Thank you, Your Honor. I just wanted to clarify a couple of points and then see if there are any further questions. In terms of whether these drivers could hire other people to perform their jobs for them for EGL, I wanted to clarify two points. And one is that the record reveals that these drivers never did hire anybody else to perform work for EGL. The only evidence in the record about purportedly these drivers hiring anybody else concerns work that they were doing for another company, which is entirely irrelevant to their relationship to EGL. But moreover, if they were to hire helpers, the contract that they signed with EGL required them to obtain EGL approval. And that can be found at SCR 471 and 613 and other places. And of course, anybody who they did hire, if they had hired somebody, would be subject to all of the restrictions that EGL imposed upon these drivers. I also wanted to clarify that these drivers did testify that it was not possible for them to cover the logos because they would have had to place a paper over the sides of their trucks. There's no contrary evidence in the record that it would have been possible to cover their logos if they were to perform work for other companies. But what about his citation to some driver who testified that you could cover over one of these logos on the truck? That deposition testimony, Your Honor, concerned a question about whether drivers who performed work for other companies could somehow cover logos. And Mr. Heath testified that if the logos were magnetic, they could be removable. But the logos at issue in this case were on the vans themselves. The only way to cover them was to place the paper over them. And EGL has not submitted any evidence showing that it was possible to cover these logos. If Your Honors have no further questions, I'm inclined to leave with that. I don't see any. Okay. Thank you both for your arguments. It's a very interesting case. It's now submitted for decision. Thanks for coming in.
judges: Korman, Hawkins, Thomas